```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :     19cv70 (DLC)
                                         :
IN RE PERRIGO COMPANY PLC SECURITIES     :     OPINION AND ORDER
LITIGATION                               :
                                         :
                                         :
---------------------------------------- X
```

APPEARANCES

For the plaintiffs:
Saxena White P.A.
Steven B. Singer
Kyla Grant
Joshua H. Saltzman
10 Bank Street, Suite 882
White Plains, NY 10606

Maya Saxena
Joseph E. White, III
Lester R. Hooker
Dianne M. Pitre
7777 Glades Road, Suite 300
Boca Raton, FL 33434

Klausner Kaufman Jensen & Levinson
Robert D. Klausner
7080 Northwest 4th Street
Plantation, FL 33317

For defendant Perrigo Company PLC:
Fried, Frank, Harris, Shriver & Jacobson LLP
Samuel P. Groner
Samuel M. Light
One New York Plaza
New York, NY 10004

James D. Wareham
James E. Anklam
Katherine L. St. Romain
801 17th Street, NW
Washington, DC 20006

For defendant Murray S. Kessler:

```
Simpson Thacher & Bartlett LLP
Joseph M. McLaughlin
Shannon K. McGovern
Amy L. Dawson
425 Lexington Avenue
New York, NY 10017

For defendant Ronald L. Winowiecki:
Dechert LLP
Hector Gonzalez
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036

Angelia Liu
35 West Wacker Drive
Suite 3400
Chicago, IL 60601

Carla G. Graff
2929 Arch Street
Philadelphia, PA 19104-2808

Tharuni A. Jayaraman
1900 K Street, NW
Washington, DC 20006
```

DENISE COTE, District Judge:

The Lead Plaintiffs in this securities fraud action have moved for class certification. The defendants oppose principally on the ground that the named plaintiffs have not been sufficiently involved in this litigation. The motion for certification is granted for the reasons that follow.

## Background

As described in the Second Amended Complaint ("SAC") and the documents upon which it relies, the predecessor of Perrigo

Company PLC ("Perrigo") purchased the Ireland-based Elan Corporation PLC ("Elan").  This allowed Perrigo to establish its tax domicile in Ireland.  Shortly before the acquisition, Elan had sold its stake in the multiple sclerosis drug Tysabri to Biogen Idec. Inc. ("Biogen") for an up-front payment of over $3.2 billion plus contingent royalty payments.  Perrigo's proceeds from the sale of Tysabri totaled over $6.0 billion.

In November 2017, the Irish Office of the Revenue Commissioners ("Irish Revenue") commenced an audit of Perrigo's 2012 and 2013 taxes.  On October 30, 2018, Irish Revenue sent a letter describing its audit findings (the "Audit Findings Letter") to Perrigo.  The Letter stated that Perrigo had a tax liability of approximately €1.6 billion, or $1.9 billion.  At the time it received the Audit Findings Letter, Perrigo had approximately $400 million in cash on hand and $4.8 billion in annual revenue.

Perrigo's November 8, 2018 Form 10-Q disclosed the existence of the Audit Findings Letter, but not the amount of the tax assessment.  Rather, it stated that the amount "cannot be quantified at this stage" but "could be material."

On November 29, Irish Revenue sent Perrigo a "Notice of Amended Assessment" which indicated that Perrigo had a "balance payable" of €1.6 billion -- the same figure calculated in the

3

Audit Findings Letter.  On December 20, 2018, Perrigo filed a Form 8-K disclosing its receipt of the Notice of Amended Assessment and the assertion of a €1.6 billion tax liability. On the next trading day, Perrigo's stock price fell from $52.36 to $37.03, representing a total decrease in value of $2.1 billion.

The original complaint in this litigation was filed on January 3, 2019.  On March 26, the City of Boca Raton General Employees' Pension Plan and the Palm Bay Police and Firefighters' Pension Fund were appointed as Lead Plaintiffs. See The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3).  The SAC was filed on May 31.  It alleges violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, and of § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

On January 23, 2020, this Court granted in part the defendants' motion to dismiss.  In re Perrigo Co. PLC Sec. Litig., 435 F. Supp. 3d 571 (S.D.N.Y. 2020) (DLC).  The plaintiffs' claims arising from Perrigo's statements made prior to the filing of the November 8, 2018 10-Q were dismissed, as were the claims against one of the individual defendants.  The plaintiffs' claim that Perrigo's November 8, 2018 10-Q was misleading was allowed to proceed.

4

Fact and expert discovery are scheduled to conclude on January 29, 2021.  Any summary judgment motion is due February 19.

On July 10, Lead Plaintiffs moved to certify a class consisting of those persons or entities who purchased or otherwise acquired the publicly traded common stock of Perrigo in the United States from November 8, 2018 through December 20, 2018 (the "Class Period") and were damaged thereby.[1]  The motion became fully submitted on September 9.

## Discussion

To qualify for class certification, the plaintiffs must prove that the proposed class action satisfies the four elements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation.  Rule 23(a), Fed. R. Civ. P.  In addition, the plaintiffs must also show that the proposed class action can proceed under one of the categories of Rule 23(b).  In this case, the plaintiffs seek certification of the class under Rule 23(b)(3).  To do so, they must show that common questions of law or fact predominate, that a class action is the superior method for bringing their claim, and that the proposed class is sufficiently ascertainable.  Rule 23(b)(3), Fed. R. Civ. P.;

---

[1] The class definition is taken from the Lead Plaintiffs' motion of July 10, 2020, as revised on September 4.

5

Brecher v. Republic of Argentina, 806 F.3d 22, 24 (2d Cir. 2015).

The defendants oppose the plaintiffs' motion for class certification on adequacy grounds alone.  Having reviewed the parties' submissions, it is clear that the plaintiffs have satisfied each of the necessary requirements of Rule 23(a) and (b)(3), and their motion to certify the class should be granted. It is only necessary to address in this Opinion the issue of the adequacy of the representation of the class.

A party seeking to certify a class must "affirmatively demonstrate his compliance" with the requirements of Rule 23. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).  The district court must "make a definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues, must resolve material factual disputes relevant to each Rule 23 requirement, and must find that each requirement is established by at least a preponderance of the evidence."  In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 117 (2d Cir. 2013) (citation omitted).  Stated differently, this means that the district judge must "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met."  Teamsters Local 445 Freight Div.

Pension Fund v. Bombardier Inc., 546 F.3d 196, 204 (2d Cir. 2008) (citation omitted).

The fourth element of Rule 23(a) requires the plaintiff to show that "the representative parties will fairly and adequately protect the interests of the class." Rule 23(a)(4), Fed. R. Civ. P. To determine the adequacy of representation, courts must ask whether: "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009) (citation omitted). The purpose of the adequacy inquiry is to "uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 625 (1997).

Here, both requirements identified in In re Flag are satisfied. There is no indication of any antagonism or conflict of interest between the Lead Plaintiffs and the absent class members. The Lead Plaintiffs are institutional investors; "[t]he PSLRA was designed to 'increase the likelihood that institutional investors will serve as lead plaintiffs.'" In re WorldCom Inc. Sec. Litig., 219 F.R.D. 267, 282 (S.D.N.Y. 2003) (quoting S. Rep. No. 104-98, at 6, U.S. Code Cong. & Admin. News 1995, pp. 679, 685). Moreover, plaintiffs' counsel is well

qualified and has extensive experience litigating complex securities class actions.

The defendants do not suggest that any conflict of interest exists between the Lead Plaintiffs and the class or that counsel is not well qualified to represent the class.  Instead, they argue that the Lead Plaintiffs have failed to engage actively and to work together to oversee the litigation, and that the indemnification agreements between the Lead Plaintiffs and class counsel constitute an impermissible "end-run" around the PSLRA. Neither of these arguments succeeds in disqualifying the Lead Plaintiffs as class representatives.

        1.    Participation by the Class Representatives

The defendants contend that the Lead Plaintiffs have too little knowledge of the case and too little engagement with the case to be adequate class representatives.  "'Attacks on the adequacy of a class representative based on the representative's ignorance,' however, have been 'expressly disapproved of' by the Supreme Court."  WorldCom, 219 F.R.D. at 286 (quoting Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 61 (2d Cir. 2000)).  "[A] class representative will be found inadequate due to ignorance only when they have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the

possibly competing interests of the attorneys."  Id. (citation omitted).

Here, the Lead Plaintiffs have shown that they stand ready to protect the interests of the class against the possibly competing interests of class counsel.  They have participated in discovery by producing documents and submitting to depositions.  They have followed every key event in the litigation through regular consultation with the general counsel for the plans that suffered the losses in Perrigo securities that are at issue here.  That counsel has worked closely with Lead Counsel.  Such cooperation is to be commended.  Because that general counsel serves in that same capacity for both Lead Plaintiffs, information is efficiently conveyed.

There is no basis to find on this record that the two Lead Plaintiffs have any difficulty working together to monitor Lead Counsel or in making appropriate decisions for the class.  That Lead Plaintiffs have delegated a significant degree of decision-making authority to their attorneys at this stage of this securities litigation is to be expected.  The named plaintiffs, who are sophisticated institutional investors, have demonstrated appropriate knowledge of the litigation and have been actively engaged in the critical stages of the case thus far.  Accordingly, the defendants' first argument fails.

2.   Indemnification Agreements

The defendants next argue that indemnification agreements between the Lead Plaintiffs and class counsel impermissibly circumvent the PSLRA's sanctions regime.  The PSLRA requires courts to make specific findings regarding compliance with Rule 11(b), Fed. R. Civ. P. by each party and attorney.  It provides: "If the court makes a finding . . . that a party or attorney violated any requirement of Rule 11(b) . . . as to any complaint, responsive pleading, or dispositive motion, the court shall impose sanctions on such party or attorney in accordance with Rule 11."  15 U.S.C. § 78u-4(c).  Therefore, if a court determines that Rule 11(b) has been violated, then it must impose sanctions on the party or attorney responsible for the violation.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 579 F.3d 143, 152 (2d Cir. 2009).

The retainer agreements between the named plaintiffs and lead counsel indemnify the named plaintiffs for any sanctions that may be imposed in this litigation.  While the PSLRA permits an allocation of the risk of sanctions between an attorney and a party, the statute does not expressly bar attorneys and parties from addressing that risk through contract.  This motion does not require the Court to determine whether, in the event

sanctions are imposed on one or both of the Lead Plaintiffs, that those sanctions cannot be satisfied by lead counsel.

The issue that must be resolved at this time is whether there has been a sufficient showing that the Lead Plaintiff can adequately represent the class.  It does not follow inexorably from the indemnification agreements that the Lead Plaintiffs will not represent the class adequately.  As significant shareholders of Perrigo's stock, they stand to gain from the outcome of the litigation, as does every other qualified class member.  This provides a substantial incentive to pursue the claims on behalf of the class with vigor.  The defendants' second argument therefore fails, and the named plaintiffs have shown that they can adequately represent the class.

## Conclusion

The plaintiffs have met their burden to establish each of the Rule 23(a) requirements, as well as the predominance, superiority, and ascertainability requirements of Rule 23(b)(3).

Accordingly, the appropriate order will issue granting their July 10, 2020 motion for class certification.

Dated:    New York, New York
          September 24, 2020

                                   _____
                                   DENISE COTE
                                   United States District Judge